UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HARLEY MAPLES, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-671-HAB-ALT |
| LOWERY, et al., | |
| Defendants. | |

## OPINION AND ORDER

Harley Maples, a prisoner without a lawyer, filed a complaint alleging that Sgt. Burke failed to protect him from being assaulted by an inmate and Sgt. Lowery and Sgt. Buckle assaulted him. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Maples, who was housed in Westville Correctional Facility's C-2 Dorm, alleges that, on about March 15, 2025, he asked Caseworker Savanna Culp[1] to place him in protective custody because inmates had threatened to harm him. ECF 1 at 2. She denied his request and told him she could not help him. *Id*. About two weeks later, on March 29, 2025, at about 4:30 a.m., a gang member came to his bunk area in C-2 Dorm and assaulted him. ECF 1 at 2. As a result, he sustained

---

[1] Maples has not named Caseworker Culp as a defendant.

an eye injury. *Id*. Maples was initially taken to a local hospital. *Id*. He was then transferred to a hospital in Indianapolis where he underwent surgery for his eye injury. *Id*.

When he returned to Westville, Maples asked Sgt. Brown[2] and Sgt. Burke to place him in protective custody. *Id*. His protective custody request was denied and he was housed in Westville's 3-Dorm – a unit he claims is "worse" than C-2 Dorm. *Id*. While housed in 3-Dorm, Maples asserts he was stabbed by an inmate on May 9, 2025. *Id*. at 2-3. The officer working on 3-Dorm that day called Sgt. Lowery, who came to his cell and took Maples to a holding area. *Id*. at 3. Maples once again requested protective custody or placement in a restrictive housing unit ("RHU"). *Id*. He asserts he was told that the only way he could be placed in RHU is if he assaulted prison staff. *Id*. Maples then attempted to headbutt Sgt. Lowery in the holding area, at which point, Sgt. Lowery allegedly assaulted him. *Id*. He remained in the holding area for several hours and was later placed in RHU. *Id*. Maples alleges that, while he was being escorted to RHU, Sgt. Buckle assaulted him while he had him upside down on the floor. *Id*. He states he sustained injuries from the two assaults. *Id*.

Maples first alleges that Sgt. Burke failed to protect him from being assaulted on May 9, 2025, because he denied his request for protective custody. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive

---

[2] Maples has not named Sgt. Brown as a defendant.

2

risk to inmate health or safety." *Id*. (internal quotation marks, brackets, and citations omitted). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In failure to protect cases, the Seventh Circuit has equated "substantial risk" to risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' does not necessarily correlate to a 'substantial risk'"). "[A] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). Maples does not allege Sgt. Burke had knowledge of an impending harm or specific threat to his safety in 3-Dorm

3

prior to the May 9, 2025, assault. Therefore, Maples has not stated a failure to protect claim against Sgt. Burke and may not proceed here.

Maples next seems to assert that Sgt. Lowery and Sgt. Buckle subjected him to excessive force when they assaulted him on May 9, 2025. The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious. *Id*. These include the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Id*.

Here, Maples has not plausibly alleged excessive force claims against either Sgt. Lowery or Sgt. Buckle. While he asserts Sgt. Lowery assaulted him after he headbutted Sgt. Lowery, he does not provide any details about the nature of Sgt. Lowery's assault. Maples also does not provide any details about Sgt. Buckle's assault, which he alleges occurred when Sgt. Buckle was escorting him to RHU. In other words, the court does not know the extent of the force used by these officers or the extent of the injuries Maples may have sustained from the assaults. *See e.g., Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the [Constitution].") (internal quotation marks and citation omitted); *Jones v. Walker*, 358 Fed. Appx. 708, 713 (7th Cir. 2009) ("A single shove that results in bruising is de minimis force that will not support a claim of excessive force."). Maples may not proceed here either.

4

This complaint does not state a claim for which relief can be granted. If Maples believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Harley Maples until **December 24, 2025**, to file an amended complaint; and

(2) CAUTIONS Harley Maples that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on November 25, 2025.

        s/ *Holly A. Brady*
        CHIEF JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT